# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATED OF AMERICA,**

      **Plaintiff,**

  v.                                           Case No. 17-CR-190

**TORONSE CARTER,**

      **Defendant.**

## ORDER ON DEFENDANT'S MOTION
## TO DETERMINE COMPETENCY TO STAND TRIAL

Toronse Carter is charged in a three-count indictment with using a facility to participate in a riot in violation of 18 U.S.C. § 2101(a)(2) and 2; damaging property used in interstate commerce in violation of 18 U.S.C. § 844(i) and 2; and knowingly using fire to commit a felony in violation of 18 U.S.C. § 844(h) and 2. This case is before me on Toronse Carter's motion for psychiatric exam and to find him incompetent to stand trial. (Docket # 8.) On December 21, 2017, I ordered that Carter be evaluated by Dr. Sheryl Dolezal. (Docket # 14.) On June 20, 2018, Dr. Dolezal's evaluation was issued. (Docket # 23.) On June 21, 2018, the government filed a motion to find Carter competent to stand trial. (Docket # 24.) On July 9, 2018, Carter requested an evidentiary hearing on the motion. (Docket # 26.) On August 7, 2018, I held an evidentiary hearing at which Dr. Dolezal testified. After considering Dr. Dolezal's forensic evaluation, her testimony, and the parties' arguments, I find that Carter is competent to stand trial.

## DR. DOLEZAL'S REPORT AND TESTIMONY

Dr. Dolezal testified that she has a bachelor degree in Behavioral Sciences and Social Work from Mount Mary University, a masters degree in Social Work with a minor in Criminal Justice from the University of Wisconsin-Milwaukke, and a Doctorate in clinical psychology from the Wisconsin School of Professional Psychology. She has attended numerous seminars on competency from the American Academy of Forensic Psychology. She has conducted approximately fifty competency evaluations.

She testified that she evaluated Carter at the Dodge County Detention Facility on February 5, 2018. The evaluation lasted over five hours with a forty-five minute lunch break. Her evaluation of Carter consisted of a clinical interview and the completion of a variety of tests which included the Wechler Adult Intelligence Scale-Fourth Edition, Wide Range Achievevement Test-Fourth Edition-Word Reading and Sentence Comprehension subtests only, Structured Interview of Malingered Symptoms, Competence Assessment of Standing Trial for Defendants with Mental Retardation, and Evaluation of Competence to Stand Trial-Revised. Dr. Dolezal testified that these tests are peer-reviewed, widely used, and widely accepted amongst psychologists. The results of these tests are detailed in Dr. Dolezal's report.

With respect to Carter's competence to stand trial, Dr. Dolezal testified that Carter was cooperative with the evaluation process and showed no overt symptoms of psychosis. She opined that Carter was not currently suffering from any mental health symptoms that would significantly interfere with, or impair his ability to understand information and reason adequately. Dr. Dolezal noted that Carter's symptoms (auditory and visual hallucinations, depression, and anxiety) are well controlled by medications. He is receiving anti-psychotic and anti-depressant medications. He also

reported a history of receiving prior mental health treatment and previous hospitalizations. Based on the information available to her, Dr. Dolezal diagnosed Carter with unspecified Schizophrenia Spectrum and Other Psychotic Disorder and Intellectual Disability with a rule out of Schizophrenia-Paranoid type. Dr. Dolezal opined that at this time, there were not any prominent signs of mental illness that would impact Carter's ability to assist his attorney. But she warned that if Carter "were to further decompensate, or potentially not continue his psychological treatment, he may have difficulties in this area."

Dr. Dolezal further testified that Carter is a "concrete thinker" rather than an abstract thinker. Dr. Dolezal defined concrete thinking as rudimentary, basic thinking. She opined that concrete thinkers are generally at the 5th or 6th grade reasoning level. "They may not see the forest but can still see the trees" according to Dr. Dolezal. She also explained that the average age for reaching abstract thinking is fifteen years old. She further testified that there are some individuals who do not reach abstract thinking. She explained that this depends on cognitive functioning, what we inherent, and what we are exposed to. She further opined that concrete thinkers who do not reach abstract reasoning can still function in society.

Dr. Dolezal testified that Carter has a factual understanding of the charges against him. He knows that he is charged with a felony and understood the severity of the charges. However, Dr. Dolezal thought that Carter did not have a realistic understanding of the length of the sentence he is facing. For example, Dr. Dolezal testified that Carter thought a sentence of one or two years in prison or a stayed sentence with probation was a likely outcome. Dr. Dolezal further testified that although Carter tested at the lower end of score for competency, she believed he would be able to assist his attorney in his defense. He understood that the court process is adversarial and that it is

his attorney's role to defend him. Dr. Dolezal opined that Carter "had a positive view of his attorney, is willing to work with his attorney for his benefit, and understands that his attorney represents his interests." Additionally, Dr. Dolezal testifed that Carter also understood the role of the prosecutor and the judge. Dr. Dolezal also opined that Carter had a "basic understanding of pleading and plea bargaining and was able to engage in basic reasoning tasks." Dr. Dolezal testified that while she did not discuss with Carter jury trial versus bench trial, she did talk to him about his right to testify or not testify, his understanding of a jury trial, and best and worst outcomes.

Dr. Dolezal explained that based on Carter's cognitive deficiencies and academic functioning, he is likely to have difficulty understanding information at times and may need information explained to him in "concrete and simplistic terms." She also recommends that documents be explained to Carter. However, she opined that Carter can take in or be educated on information if it is explained to him.

Dr. Dolezal testified that Carter's functioning at the concrete level does not surprise her given his extreme cognitive deficiencies. She also testified that she does not believe that Carter is feigning or malingering on his cognitive testing. She testified that his concrete functioning is congruent with his IQ. However, she finds that he is competent due to his ability to understand the legal process and the individuals' roles and functions, his basic understanding of his case, the fact that he knows that he may need extra assistance from his attorney, and the need to cooperate with his attorney. She concluded to a reasonable degree of psychological certainty that although Carter is concrete in his thinking and reasoning, he demonstrates at least basic or minimal skills in order to be competent to proceed.

**ANALYSIS**

Due process requires that a defendant be competent to stand trial and to be sentenced. *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991). The test for mental competence is whether the defendant has sufficient present ability to consult with his lawyer with a degree of rational understanding and whether he has a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402 (1960). The competency standard to stand trial and to plead guilty is the same. *Collins*, 949 F.2d at 927. The government bears the burden of proving by preponderance of the evidence that the defendant is competent. *United States v. Teague*, 956 F.2d 1427, 1436 n.10 (7th Cir. 1992).

In this case, after conducting a thorough forensic evaluation and clinically interviewing Carter, Dr. Dolezal concluded that although Carter has some cognitive deficiencies and is functioning at a concrete thinking and reasoning level, he possesses the basic skills to be competent to stand trial. Carter presented no lay or expert witness to rebut Dr. Dolezal's testimony. However, citing to Carter's cognitive deficiencies, Carter's counsel argues that Carter be found incompetent. Specifically, he argues that Carter is incompetent to assist counsel and to make knowing and intelligent waivers of his constitutional rights. He is also concerned about Carter's ability to withstand the demands of trial or to understand the complex elements of the offense that he is charged with. He also points to Carter's tendency at times to "check out" as in a catatonic state. Counsel argues that Dr. Dolezal's recommendation to have information recapped and explained to Carter may be workable in the context of an attorney-client meeting, but is not workable in a trial setting.

There is no question that Carter's cognitive functioning is concerning. His Full Scale IQ measures within the "Extremely Deficient" range at the 0.3 percentile, indicating that 99.7% of

individuals his same age would perform better than him. Even his strongest area of performance, the area of Verbal Comprehension, places him at the low end of the Borderline range and at the 2nd percentile. He also tested in the Below Average range in the area of abstract reasoning, general fund of information, and word knowledge. He tested in the Far Below range in the area of social judgment, maturity, and practical knowledge. His Perceptual Reasoning, Working Memory and Processing Speed abilities (nonverbal reasoning, visual, spatial, speed of processing information) are also "Extremely Deficient." As to reading recognition, he tested at a 5.1 grade level. On his ability to comprehend sentences, he tested at a 2.6 grade level. Dr. Dolezal testified that on a "functional" level she would place Carter at a 6th grade level. (Dr. Dolezal testified that Carter completed the 8th or 9th grade).

Nonetheless, on the scale measuring Basic Legal Concepts, he attained a score of 23 out of 25. By comparison, individuals who are determined to be "mentally retarded and competent generally have a score of 18.3." Individuals who are determined to be "mentally retarded and incompetent have a mean score of 13.7." Accordingly, Carter's score is significantly higher and supports Dr. Dolezal's opinion that he has a basic understanding of legal concepts.

On the scale measuring ability to Understand Case Events, Carter scored 9 out of 10. For comparison, individuals that scored a mean of 8.0 on this scale were determined to be competent and individuals who scored a mean of 5.2 were determined to be incompetent. This measurement also supports Dr. Dolezal's opinion that Carter understands the facts of his case.

Finally, on the area challenged by Carter's counsel, Carter's ability to assist in his own defense, Carter indeed tested lower. Specifically, Carter scored 10 out of 15. For comparison, the mean score for individuals who are determined to be "mentally retarded and incompetent is 8.2 "

and the mean score for those who are determined to be "mentally retarded and competent is 10.7." Thus, while Carter's score is on the lower end, he is still in the range of individuals who have been determined to be competent.

Accordingly, while Carter's counsel's concerns are understandable, Dr. Dolezal's opinion that Carter is competent, even in the area of "Skills to Assist Defense, is supported by the forensic testing. Additionally, recognizing Carter's concrete thinking and reasoning, Dr. Dolezal made several recommendations to ensure that Carter understands and is able to assist in his defense. First, Dr. Dolezal recommended that documents be explained to Carter so that he gains an adequate understanding of the concepts. Next, she also recommends that counsel recap court processes to Carter to make sure that he understands what occurred. Finally, she recommended that counsel have Carter explain, in his own words, information back to counsel to make sure that he understands. As Dr. Dolezal recognizes, this all means that counsel will have to spend more time with Carter. But having to explain information in more simple terms, or having to spend more time to explain information, does not negate that Carter has the ability to understand and, in fact, does understand basic legal concepts.

Carter's counsel argues that Dr. Dolezal's recommendations are not workable in a trial setting where things happen quickly. While I agree with counsel that these recommendations work better within the confines of attorney-client meetings, I disagree that some accommodations, albeit difficult, cannot be made within the trial context. For example, in order to incorporate Dr. Dolezal's recommendations in a trial setting, the judge can provide Carter more frequent breaks to consult and recap with his attorney. Additionally, the judge, the prosecutor, and defense counsel can all be mindful to speak in plain English, rather than legalese. Dr. Dolezal testified that Carter has difficulty

with "large words" or advanced vocabulary. However, she testified that they had no difficulty communicating during the evaluation.

Relatedly, Carter's counsel expressed concerns about Carter "checking out." Dr. Dolezal testified that she did not observe Carter going catatonic or "checking out" during her lengthy forensic examination and clinical interview. In fact, throughout her report she describes Carter as cooperative. Even so, this concern can also be addressed with more frequent breaks as needed.

Finally, and perhaps most importantly, Carter's counsel suggests that more than just a concrete or rudimentary level of understanding of legal concepts is required to assist counsel and to knowingly and intelligently waive constitutional rights. He concedes that Carter would not have difficulty understanding what is going on, the role of the judge, and the role of the prosecutor. But he argues that Carter would not understand at an abstract level. I have found no law to support that an abstract level of understanding of legal concepts is required for a defendant to be competent to stand trial or to plead guilty. Again, the competency standard to stand trial and to plead guilty is the same. *Collins*, 949 F.2d at 927. For both, the standard is the ability of the defendant to consult with his lawyer with a degree of *rational* understanding and whether he has a *rational* and factual understanding of the proceedings against him. (emphasis added). Although his level of thinking is "concrete" rather than "abstract," Carter demonstrates the ability to assist his lawyer. He also shows that he understands the facts of his case, the proceedings against him, and the severity of the charges that he faces. The law requires nothing more.

For these reasons, based on the forensic evaluation and testimony of Dr. Dolezal, I find that the government has shown by a preponderance of the evidence that Torense Carter is mentally competent to stand trial and to participate in a judicial proceeding to determine the validity of the

criminal charges against him; that he is mentally competent and able to understand the nature and the consequences of the proceedings against him; and that he is able to assist in his defense.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 16th day of August, 2018.

                BY THE COURT

                *s/ Nancy Joseph*
                NANCY JOSEPH
                United States Magistrate Judge