UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes and Order

| | |
|---|---|
| DATE: | April 1, 2020 |
| JUDGE: | Pamela Pepper |
| CASE NO: | 2017-cr-190 |
| CASE NAME: | United States of America v. Toronse Carter |
| NATURE OF HEARING: | Status Conference |
| APPEARANCES: | Christopher Ladwig – Attorney for the government |
| | Craig Powell – Attorney for the defendant |
| COURTROOM DEPUTY: | Kristine Wrobel |
| TIME: | 9:43 a.m. – 10:02 a.m. |
| HEARING: | April 15, 2020 at 11:10 a.m. |

  The court noted that it scheduled this hearing because it had received the evaluation report resulting from the defendant's commitment to the custody of the Attorney General. The court wanted to discuss with the parties the next step in the process, and how that step might be impacted by the COVID-19 crisis. The court observed that the Bureau of Prisons' website indicated that the BOP had modified its operations due to COVID-19 and were not transferring inmates, but that the BOP was conducting transfers for forensic studies. The court speculated that that would include the transfer of the defendant, and that the next step in this process normally would be for the defendant to return to this court for another competency hearing. The court asked the parties to address whether such a return made sense, given the rapid spread of the virus in Wisconsin and reported outbreaks in local jails.

  The prosecutor agreed that the next step was to bring the defendant back for a second competency hearing, but given the current situation, he had no objection if defense counsel felt more comfortable with the defendant remaining at FMC Butner for the time being. Counsel understood the need to consider the defendant's safety.

  Defense counsel indicated that he had not spoken to the defendant since the parties had received the evaluation report. He expressed concern about bringing the defendant back to Milwaukee with the crisis here, given that he could not envision a situation in which the defendant could be released without having to go through a local jail. Counsel noted that he was conflicted; before the defendant had been committed to the custody of the Attorney General, he had been arranging for his release on supervision. Counsel did not want to advocate for keeping his client confined, but also struggled with making the right decision for his client's health with limited information about the situation at FMC Butner and not having been able to speak with his client. He proposed that the court might leave the situation as it is for a short time—a couple of weeks or so—to see if the situation in Milwaukee improved.

1

The court told defense counsel that it understood his conflicting feelings, and the frustration of trying to make the right decision about something that no one at this hearing was trained to evaluate (none of the hearing participants being doctors or infectious disease experts). The court viewed the website for FMC Butner and discovered that it was not allowing visitors. The court proposed that it schedule another status conference in the next two weeks to give defense counsel time to speak with his client and to give all the parties time to find out about the transportation situation.

The parties agreed with the court's proposal. The court scheduled another status conference for April 15, 2020 at 11:10 a.m. by telephone. The parties should call the court's conference line at 888-557-8511 and use the access code 4893665#.

The court then addressed some procedural issues. The court first noted that the magistrate judge had not set a briefing schedule for pretrial motions because the concerns about the defendant's competence arose before the case got that far. The court indicated that if the defendant wanted to file pretrial motions, it would need to refer the case back to the magistrate judge for a briefing schedule. Second, the court noted that the defendant had filed a motion to dismiss the indictment because it had taken six months for the defendant to be transported to Butner after the court had ordered him remitted to the Attorney General's custody. Judge Joseph had issued a report recommending that the court deny the motion. The defendant had not objected. Judge Duffin had scheduled a hearing to find out why it was taking so long to transport the defendant; the defendant had been transported before the hearing date. The court asked whether the defendant objected to the report and recommendation.

Defense counsel confirmed that he did not file an objection to the recommendation because the defendant had been transported to the custody of the Attorney General, and defense counsel suspected that any objection he might file would not be resolved in the defendant's favor. Counsel had concluded that the fact that the defendant had been transported mooted the motion.

Because there was no objection to the recommendation, the court reviews it under the clear error standard. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 439 (7th Cir. 1999). Judge Joseph determined that the four-month period that the defendant spent in custody awaiting transfer for his competency evaluation did not violate 18 U.S.C. §4241(d)(1) but that his extended custody presumptively violated his due process rights. Dkt. No. 63 at 3. She found the delay unreasonable and not excused by good cause. Id. Nevertheless, Judge Joseph found no evidence of government misconduct that

would warrant a dismissal. She said, "It certainly took an unreasonably long time for the U.S. Marshals to receive Judge Pepper's June 4, 2019 commitment order, and the lack of staffing at the Bureau of Prisons is unfortunate and unacceptable, but neither is so grossly shocking an outrageous that it violates the universal sense of justice." Id. at 4. Under the totality of the circumstances she recommended that the court deny the motion to dismiss. Id.

Judge Joseph did not commit clear error. The statute says that the "Attorney General shall hospitalize the defendant for treatment in a suitable facility--(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future, he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. §4241(d)(1). The plain language states that the *hospitalization* cannot exceed four months. See generally United States v. Sherman, 912, F.2d 907, n. 2 (7th Cir. 1990)("once a patient is in the custody of the Attorney General the statute requires hospitalization for treatment in a suitable facility only for such a reasonable period of time, not to exceed four months as is necessary to determine competency."). It does not reference custody preceding the hospitalization.

The defendant acknowledged that the Ninth Circuit has held that the plain language of §4241(d) provides that the four-month period begins on the date of hospitalization. United States v. Villegas, 589 F. App'x 372, 373 (9th Cir. 2015); see also United States v. Smith, 764 F. Supp. 2d 541, 544-45 (W.D.N.Y 2011). The defendant cited a Sixth Circuit case and a Colorado district court case ruling that the four-month period runs from the date of the commitment order. See United States v. Baker, 807 F.2d 1315, 1320; United States v. Moore, 2008 WL 906WL 906035 (D. Colo. 2008). Given the plain language of the statue, the absence of authority from this circuit and the split among other courts, the court cannot conclude that Judge Joseph committed clear error in finding the four-month detention prior to transfer did not violate the statute.

That said, the four months that the defendant spent in custody prior to the hospitalization was a presumptive violation of his due process rights. Judge Joseph relied on United States v. Zapata-Herrera, 2015 WL 4878319, *2 (S.D. Cal. 2015), holding that dismissal of an indictment on due process grounds should occur only when "government conduct is so grossly shocking and outrageous that it violates the universal sense of justice." Id. (quoting United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir. 1993). Courts may also dismiss an indictment using their supervisory powers but only "in cases of flagrant prosecutorial misconduct." Id. (quoting United States v. Chapman, 524 F.3d 1073, 1085 (9th Cir. 2008).

Dismissal of an indictment isn't warranted on these facts. While the defendant's lengthy detention troubling, the court cannot characterize it as grossly shocking, outrageous or the result of prosecutorial misconduct. The timeline provided by the government explained that the court entered the order on June 4, 2019, and that the U.S. Attorney's Office requested an update from the U.S. Marshals Service on July 11, 2019. It turned out that the U.S. Marshal had not received the court's order; it obtained the order immediately and began processing the transfer. Dkt. No. 62. The defendant was designated to FMC Butner on July 23, 2019. The defendant received his tuberculosis clearance for transfer on August 2, 2019. On August 7, 2019, the U.S. Marshal's Service submitted the movement request with Justice Prisoner and Alien Transportation System. The scheduled date for transport was October 21, 2019. There was an error in getting the court's order to the Marshals Service, but once the USMS received the order, it acted promptly and expeditiously. And the government was reasonable for alerting the Marshal to the fact that there was a commitment order of which the USMS was unaware. There was no misconduct. The court will adopt the recommendation and deny the defendant's motion to dismiss the indictment.

Finally, the court noted that given the four-month hospitalization time frame in §4241, there may be issues with FMC Butner keeping the defendant for a longer period. The court stated that it would address that issue if defense counsel raised it.

The court **ADOPTS** Judge Joseph's recommendation, Dkt. No. 63, and **DENIES** the defendant's motion to dismiss the indictment, Dkt. No. 57.

Dated in Milwaukee, Wisconsin this 1st day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**